United States District Court
Middle District of Florida
Jacksonville Division

TINA PROESCHER,

     *Plaintiff,*

V.                                 No. 3:17-CV-1052-J-32PDB

SECURITY COLLECTION AGENCY,

     *Defendant.*

---

# Report & Recommendation

In this unfair-debt-collection case, Tina Proescher moves for default judgment against Security Collection Agency ("SCA"). Doc. 13. The undersigned conducted an evidentiary hearing on the motion on January 31, 2018. Doc. 12 (minutes); Doc. 14 (transcript).

## I.    Background

### A.    *Complaint and Exhibits*

In the complaint and through two exhibits to the complaint, Proescher alleges these facts.

Proescher resides in Duval County. Doc. 1 ¶ 4. SCA conducts business in Duval County. Doc. 1 ¶ 5. On May 3, 2016, Proescher was in a car accident, and the City of Jacksonville's Fire and Rescue Department transported her from the accident by ambulance. Doc. 1 ¶ 8. She suffered injuries from the accident and retained counsel. Doc. 1 ¶ 9. After insurance, she owed $135 for the transportation. Doc. 1 ¶ 10. On June 20, 2017, her counsel sent a $135 check on her behalf to the City of Jacksonville. Doc. 1 ¶ 11; Doc. 1-1. The check was cashed. Doc. 1 ¶ 12. Unbeknownst to Proescher, the City of Jacksonville transferred the account to SCA. Doc. 1 ¶ 13. SCA mailed a

letter dated August 4, 2017, from its address in Edenton, North Carolina, to Proescher's address in Jacksonville, Florida:

> **THIS IS YOUR OFFICIAL NOTIFICATION THAT WE ARE REPORTING YOUR DELINQUENT DEBT TO THE NATIONAL CREDIT BUREAUS-EQUIFAX AND TRANS UNION**
>
> We have given you ample time to respond to our previous request for payment of your account. Your lack of commitment to settle this account can only lead us to the conclusion that you do not intend to pay this debt.
>
> This is your official notification that we are proceeding with collection efforts against you as permitted by State and Federal regulations. You control the next step in the collection process. Do not ignore this notice. It is in your best interest to pay this bill in full so that we may inform the credit bureaus that your debt is satisfied.
>
> Mail your check or money order for the full amount due to our office in the envelope provided. Write the File Number on your check or money order so that we may credit your account properly. You may also go to our website listed below and pay with a credit or debit card or by electronic check payment. **Credit, debit, and electronic check payments will appear on your statement under our corporate name Applied Business Services, Inc.**
>
> **APPLIED BUSINESS SERVICES**
>
> **This is an attempt by a debt collector to collect a debt; any information obtained will be used for that purpose.**

Doc. 1-2. SCA "is reporting the balance as being owed on [her] credit report." Doc. 1 ¶ 15. Proescher "suffers from mental and physical distress" because she thought the debt had been paid, she did not understand why she was receiving the statement for a debt for which she was no longer responsible, and she was upset that the debt was reported to credit bureaus. Doc. 1 ¶¶ 19, 28.

Within approximately a month of receiving the letter, Proescher sued. Doc. 1. She brings two causes of action. In the first, she contends SCA tried to collect a debt previously paid, in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. §§ 1692–1692p. Doc. 1 ¶¶ 16–20. In the second, she contends SCA claimed, attempted, or threatened to enforce a debt even though it knew or should have known the debt was illegitimate, in violation of the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. §§ 559.55–559.785, Doc. 1 ¶¶ 21–28.

Proescher demands a trial by jury, statutory damages of $1000 under 15 U.S.C. § 1692k(a)(2)(A), statutory damages of $1000 under Fla. Stat. § 559.77(2), actual damages, costs, attorney's fees, "injunctive and declaratory relief regarding further collection attempts," and "all other relief to which [she] is entitled."[1] Doc. 1 at 5.

## B.   *Return of Service, Motions for Default and Default Judgment, and Amended Motion for Default Judgment*

On December 13, 2017, Proescher filed a return of service signed by a licensed process server in which he states he served a true copy of the summons, complaint, and exhibits on October 12, 2017, at 2:50 p.m., on Donna Mock as the registered agent for SCA, doing business as Applied Business Services, Inc., and informed her of the contents. Doc. 4.

With the return of service, Proescher moved for entry of default, Doc. 5, and the clerk entered default, Doc. 6. She then filed a two-page motion for default judgment, Doc. 7, a one-sentence affidavit by counsel stating "the allegations in the Complaint against Defendant are true," Doc. 7-1, and a proposed final default judgment stating, "Plaintiff, Tina Proescher, shall recover from Defendant, Security Collection Agency d/b/a Applied Business Services, Inc. in the amount of $20,725.00 in damages, costs in the amount of $525.24, and attorney's fees of $1,581.00, for a total of $22,831.27, which shall bear interest at the rate of 4.97% annum until paid for which let execution issue." Doc. 7-2.

---

[1] In the complaint, Proescher states SCA "intentionally and/or negligently attempted to collect a debt for a property which Plaintiff had not had an ownership interest in in over two years." Doc. 1 ¶ 27. This appears to be an error.

The undersigned directed Proescher to file an amended motion that stated the damages and attorney's fees sought and contained a memorandum of law addressing whether service of process was proper, whether the Court has personal jurisdiction over SCA, whether the allegations in the complaint state a claim on which relief may be granted, and the reasonableness of any requested attorney's fees. Doc. 8.

Proescher filed a two-page amended motion for entry of default judgment, Doc. 9, a proposed final default judgment, Doc. 9-1, and a separate memorandum of law. Doc. 9-2. In the memorandum, she set forth the procedural history and factual allegations; stated SCA had mailed her counsel a letter on November 2, 2017, indicating it would correct its mistakes; and stated her counsel had urged an SCA representative to formally respond to the complaint. Doc. 9-2 ¶¶ 1–14. For the FDCPA cause of action, she contended she "has suffered emotional distress and anxiety because of fear of being sued by Defendant or that her credit would continue to plunge as a result of Defendant's reporting of the debt." Doc. 9-2 ¶ 20. For the FCCPA cause of action, she contended SCA violated Fla. Stat. § 559.72(9) and "[SCA] is obviously not taking this lawsuit seriously. They sent the undersigned correspondence in November of 2017 acknowledging their mistakes and that they would be correcting them. It was only until this lawsuit was filed did they correct the issues." Doc. 9–2 ¶¶ 22, 26. For attorney's fees and costs, her counsel stated:

28.   The undersigned has been admitted to practice law since 2010.

29.   The undersigned works at a 250.00/hourly rate.

30.   The undersigned has a paralegal with over 27 years of experience who works at $125.00 an hour.

31.   The undersigned has spent a total of 7.3 hours of attorney time in this case.

32.   The undersigned's paralegal has spent a total of 1.2 hours of time in this case.

33.   The undersigned has incurred costs in the amount of $525.00 in this case.

Doc. 9-2 ¶¶ 28–33. The proposed final judgment states, "Plaintiff, Tina Proescher, shall recover from Defendant, Security Collection Agency d/b/a Applied Business Services, Inc. in the amount of $15,000 in actual damages, $5,000.00 in punitive damages, costs in the amount of $525.00, and attorney's fees of $1975.00, for a total of $22,500.00, which shall bear interest at the rate of 4.97% per annum until paid for which let execution issue." Doc. 9-1.

## C.   *Evidentiary Hearing*

The undersigned issued an order stating the Court would "conduct an evidentiary hearing" on the amended motion for default judgment and damages. Doc. 10.

At the evidentiary hearing, Proescher's counsel pinpointed § 807(2)(A) of the FDCPA, codified at 15 U.S.C. § 1692e(2)(A), as the FDCPA section under which she was proceeding. Doc. 14 at 4. He offered, and the undersigned admitted, seven exhibits. Doc. 14 at 3. They are exhibits to the complaint, the clerk's entry of default, the amended motion for default judgment, two letters from SCA sent after the lawsuit began, and an affidavit by Proescher. Docs. 12-1–12-8. In one letter, dated October 20, 2017, SCA states:

> Dear Tina Proescher,
>
> The above referenced account, regarding date of service 5/13/16, is being removed from your credit file. The request has been sent to the credit bureau. It may take the credit bureau up to 60 days to remove the listing. If the account is still being shown on your credit file you may dispute with the credit bureau.
>
> We apologize for any inconvenience this may have caused.
>
> If you have any further questions, please call our Account Service Center at 1-800-849-7152.
>
> This is an attempt by a debt collector to collect a debt; any information will be used for that purpose only.

Sincerely,

Security Collection Agency.

Doc. 12-5. In a letter dated November 2, 2017, SCA states:

Dear Gregory S. Gilbert [Proescher's counsel]:

We received a copy of your complaint on 10/19/2017 and would like to provide some pertinent information.

We have never had any communication with Ms. Proescher and had no idea that the account in question was paid in full. Per our records, we mailed 3 letters to Ms. Proescher @ 12772 Lanier Rd. Jacksonville, FL 32226 with no response.

As a result of receiving your complaint, we contacted our client, Jacksonville Fire & Rescue, and confirmed the account was actually paid in full. We have updated our records to reflect this payment and have sent a request to remove the account from Ms. Proescher's credit bureau report on 10/20/2017. I have included a standard credit bureau removal letter addressed to Ms. Proescher to assist with getting this account removed from her credit report as promptly as possible.

We hope this issue is resolved to your satisfaction.

Doc. 12-6. In the affidavit, Proescher restates factual allegations in the complaint, Doc. 12-7 ¶¶ 2–7, and adds:

9.      I found the [August 4, 2017] letter to be very disturbing and unprofessional.

10.     I was never previously notified the debt was sold or transferred to Defendant from the City of Jax nor had I been contacted by Defendant for any reason whatsoever.

11.     Defendant also reported the "debt" as being past due and owed on my credit report.

12.     Upon receiving the letter and reviewing my credit report, I became emotionally distraught and physically ill as a direct result of Defendant's actions.

13.     I thought I was having a panic attack because I had worked so hard to build and maintain my credit score.

14.     Upon receiving the letter, I immediately attempted to contact my attorney to figure out why I was receiving the bill that I received.

15.     It took several hours of my time to realize I needed to take legal action to get this resolved.

Doc. 12-7 ¶¶ 9-15.

Proescher's counsel stated she was seeking statutory damages, actual damages, attorney's fees, and costs. Doc. 14 at 4. He explained he was not at the evidentiary hearing—and therefore could not testify—because she had a "work function that she could not miss." Doc. 14 at 8. He stated he was not seeking a jury on damages. Doc. 14 at 13. He asked for an opportunity to file another motion so attorney's fees could include time he had spent on the case to prepare for the hearing. Doc. 14 at 15. The undersigned gave him that opportunity. Doc. 14 at 15.

### D.     Second Motion for Default Judgment

In the second amended motion for default judgment (the motion now before the Court), Proescher adds to the memorandum of law three sentences concerning personal jurisdiction: "The Court has personal jurisdiction over the Defendant because the necessary minimum contacts have been established," "Defendant mailed correspondence to the Plaintiff to her Jacksonville, Florida address using the US Mail Service," and "According to the Florida Division of Corporations, Defendant is registered to do business in the state of Florida under FEI/EIN Number 56-1095420." Doc. 13 ¶¶ 15–17. Her counsel changes the hours worked on this case from 7.3 to 12.6 and the requested attorney's fees and costs from $2500 to $3850. Doc. 13 ¶¶ 34, 37. She contends she is "entitled to actual damages, costs and attorney fees" for the FDCPA violation and "actual damages, including emotional distress, punitive damages and reasonable attorney fees and costs" for the FCCPA violation, Doc. 13 at 4, and asks "that the Court enter judgment in [her] favor … and/or any other relief the Court deems just and proper." Doc. 13 at 2.

## II.      Law and Analysis

Default judgment is warranted because the Court has subject-matter jurisdiction over the claims, Proescher has standing to sue, the Court has personal jurisdiction over SCA, Proescher properly obtained default, and the factual allegations in the complaint and evidence establish an FDCPA claim on which relief may be granted. But granting all of the requested relief is unwarranted because the allegations and evidence establish no FCCPA claim on which relief may be granted and Proescher has failed to establish all damages, fees, and costs requested.

### A.      *Subject-Matter Jurisdiction*

A district court has subject-matter jurisdiction over a federal claim, 28 U.S.C. § 1331, and supplemental jurisdiction over related claims, 28 U.S.C. § 1367(a).

The Court has subject-matter jurisdiction over Proescher's FDCPA claim because it is a federal claim and supplemental jurisdiction over her FCCPA claim because it relates to the FDCPA claim.

### B.      *Standing*

Article III of the United States Constitution limits "federal-court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). In *Spokeo,* the United States Supreme Court explained that, for standing, a plaintiff must clearly allege facts demonstrating she suffered an injury in fact (an invasion of some legally protected interest that is concrete and particularized and actual or imminent) that is fairly traceable to the challenged conduct of the defendant and likely to be redressed by a favorable judicial decision. *Id.* at 1547–48. The Court explained that a violation of a statutorily granted procedural right may be an injury in fact if the violation creates a real risk of harm. *Id.* at 1549.

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The provision under which Proescher proceeds—

§ 807(2)(A)—prohibits a debt collector from falsely representing "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(a).

Proescher clearly alleges facts demonstrating that she has standing—i.e., she suffered an injury in fact fairly traceable to SCA's challenged conduct and likely to be redressed by a favorable judicial decision—to bring the FDCPA claim through allegations that SCA caused her mental and physical distress by trying to collect from her a debt she did not owe and reporting her failure to pay the debt she did not owe to credit reporting agencies.[2] *See* Doc. 1 ¶¶ 11–13, 19, 28; Doc. 1-1.

## C.   *Personal Jurisdiction*

Before entering default judgment, a court should ensure it has personal jurisdiction over the defendant. *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001); *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). For a federal court to have personal jurisdiction over a nonresident defendant, the forum state's

---

[2] This conclusion accords with post-*Spokeo* cases with similar allegations and the same or similar causes of action under the FDCPA. *See, e.g., Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 344 (7th Cir. 2018) (plaintiffs alleged an injury in fact by alleging the defendant failed to report that debts were disputed to credit reporting agencies; inaccurate credit ratings cause a real risk of financial harm); *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 692–93 (8th Cir. 2017) (plaintiff alleged an injury in fact by alleging the defendant served him with discovery requests on an extinguished debt, falsely told him he had to respond to them, and told him it was trying to collect a debt; and those violations tend to "cause reasonable people mental distress" and "create the risk of real, concrete harms"); *Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 250 (5th Cir. 2017) (plaintiff suffered injury in fact; the defendant's FDCPA violation exposed him "to a real risk of financial harm caused by an inaccurate credit rating"); *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994 (11th Cir. 2016) (plaintiff alleged an injury in fact by alleging the defendant sent her a letter that did not contain all required disclosures; the invasion of her right to receive disclosures was not hypothetical or uncertain even with no tangible economic or physical harm); *Ben-Davies v. Blibaum & Assocs., P.A.*, 695 F. App'x 674, 676 (4th Cir. 2017) (plaintiff alleged injury in fact by alleging the defendant tried to collect a debt by demanding an inflated sum based on an improper interest rate, causing emotional distress, anger, and frustration); *Moore v. Blibaum & Assocs., P.A.*, 693 F. App'x 205, 206 (4th Cir. 2017) (same).

long-arm statute must reach the defendant and the defendant must have sufficient contacts with the forum state such that exercising jurisdiction would not offend due process. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

To determine whether Florida's long-arm statute reaches a nonresident defendant, a federal court in Florida must construe the statute according to state law. *Id.* at 1352. The statute provides both general jurisdiction (if the nonresident defendant engages in substantial and not isolated activity in Florida regardless of whether the claim arose in Florida) and specific jurisdiction (if the nonresident defendant's action upon which the claim is based occurred in Florida), including over a nonresident defendant who commits a tortious act in Florida, Fla. Stat. § 48.193(1)(a)(2), that may be established by a communication into Florida that forms the basis for the claim, *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). A violation of a statute prohibiting unfair debt collection is a tortious act because it breaches a duty imposed by law. *Vlach v. Yaple*, 670 F. Supp. 2d 644, 648 (N.D. Ohio 2009).

Because Proescher's claims arise from SCA's letter to an address in Florida, the Court has specific jurisdiction over SCA under the tortious-act provision of Florida's long-arm statute.

The requisite minimum contacts to satisfy due process are not built into Florida's long-arm statute. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 500 (Fla. 1989). In a specific personal jurisdiction case, a court still must examine whether the plaintiff's claim arises out of or relates to the nonresident defendant's contacts with the forum state, whether the nonresident defendant purposefully availed itself of the privilege of conducting activities in the forum state, and whether exercising jurisdiction comports with traditional notions of fair play and substantial justice.[3] *Louis Vuitton*, 736 F.3d at 1355.

---

[3]Factors pertinent to whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice are (1) the defendant's burden in defending

Exercising personal jurisdiction over SCA does not offend due process. Proescher's case arises out of SCA's purposeful letter into Florida. Doc. 12-6. Florida has an interest in resolving the dispute because the letter allegedly harmed a Florida resident, and its law concerning unfair-debt-collection practices shows the state's desire to curb such practices. *See* Fla. Stat. §§ 559.55−559.785. Proescher, a Florida resident, Doc. 1 ¶ 4, has an interest in obtaining convenient and effective relief that would be unavailable if she had to sue SCA in North Carolina. At least one key witness is in Florida. And the shared interests of the states in furthering fundamental substantive social policies favors jurisdiction where a debt collector could send improper communications "with relative impunity" if an FDCPA lawsuit could not be brought where the debt collector sent the communication. *Sluys v. Hand*, 831 F. Supp. 321, 324 (S.D.N.Y. 1993). The Court's exercise of jurisdiction over SCA in this case will not offend due process, and, with the long-arm and due-process requirements satisfied, the Court has jurisdiction over SCA in this case.[4]

## D.    *Default*

A plaintiff may serve process on a defendant in the United States by delivering a copy of the summons and complaint to an agent authorized to receive service of process on behalf of the defendant. Fed. R. Civ. P. 4(e)(2)(C). If "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). By defaulting, the defendant admits the plaintiff's well-

---

the case in the forum state, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in resolving disputes in the most efficient way, and (5) the shared interest of the states in furthering fundamental substantive social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985).

[4]Other courts have found they have personal jurisdiction over out-of-state debt collectors under similar circumstances. *See, e.g.*, *Fagan v. Lawrence Nathan Assocs., Inc.*, 957 F. Supp. 2d 784, 793−94 (E.D. La. 2013); *Rohn v. Commercial Recovery Sys., Inc.*, No. 13-cv-10780, 2013 WL 6195578, at *4−5 (E.D. Mich. Nov. 26, 2013) (unpublished); *Tacoronte v. Tate & Kirlin Assocs.*, No. 6:13-cv-331, 2013 WL 5970720, at *4 (M.D. Fla. Nov. 8, 2013) (unpublished).

pleaded factual allegations. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009).

Through the affidavit of the process server stating he personally served SCA's registered agent with the summons and complaint, Doc. 4, and reference to the docket, Proescher showed SCA failed to plead or otherwise defend. On Proescher's motion, Doc. 5, the clerk properly entered default, Doc. 6.

**E.    Claims**

After entry of default, a party may apply to the court for default judgment. Fed. R. Civ. P. 55(b)(2). The court may conduct a hearing—preserving any federal statutory right to a jury trial—to conduct an accounting, determine the damages amount, establish with evidence the truth of any allegation, or investigate any other matter. Fed. R. Civ. P. 55(b)(2)(A)–(D). Before entering default judgment, a court must ensure the well-pleaded factual allegations state a claim on which relief may be granted. *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975).

In Florida, consumer debt-collection practices are regulated by the FDCPA and the FCCPA. The FCCPA provides that, in interpreting it, courts must give "great weight" to the interpretation of the FDCPA. Fla. Stat. § 559.77(5). But the acts are not identical, and a violation of one does not necessarily equal a violation of the other. *Beeders v. Gulf Coast Collection Bureau, Inc.*, No. 8:09-cv-458, 2010 WL 2696404, at *6 (M.D. Fla. Jul. 6, 2010) (unpublished).

The FDCPA creates a private cause of action by *any person* against a *debt collector* who violates any of its provisions. 15 U.S.C. § 1692k(a). The FCCPA creates a private cause of action by any *debtor* against any *person* who violates any of its provisions. Fla. Stat. § 559.77(1). Neither requires proof of actual injury. *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1083 (7th Cir. 2013); *Laughlin v. Household Bank, Ltd.*, 969 So. 2d 509, 513 (Fla. 1st Dist. Ct. App. 2007). Under both, a debt is

"any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5); Fla. Stat. § 559.55(6). Under both, a consumer or debtor is "any natural person obligated or allegedly obligated to pay" a debt. 15 U.S.C. § 1692a(3); Fla. Stat. § 559.55(8). Under the FDCPA, a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Under the FCCPA, a debt collector is "any person who uses any instrumentality of commerce within [Florida], whether initiated from within or outside [Florida], in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" (with exceptions that do not apply here). Fla. Stat. § 559.55(7).

The FDCPA section under which Proescher proceeds—§ 807(2)(A)—prohibits a debt collector from falsely representing "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(a). To be liable for a violation, a debt collector need not act knowingly or intentionally (though a debt collector may assert a "bona fide error" affirmative defense). *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270–71 (11th Cir. 2011). The FCCPA provision under which Proescher proceeds provides that "no person shall "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9). To be liable for a violation, a person must have actual knowledge that the legal right it was asserting did not exist. *Read v. MFP, Inc.*, 85 So. 3d 1151, 1155 (Fla. 2d DCA 2012) . The FCCPA thus provides no recovery if the person "merely should have known the debt was not legitimate." *Schauer v. Morse Operations, Inc.*, 5 So. 3d 2, 6 (Fla. 4th DCA 2009).

Proescher's factual allegations in her complaint, as supplemented by evidence, establish she is a natural person obligated to pay a debt, and, therefore, is a consumer or debtor under both acts. *See* 15 U.S.C. § 1692a(3); Fla. Stat. § 559.55(8). They also establish SCA is a collection agency that mails letters into Florida to collect debts, and, therefore, is a debt collector under both acts. *See* 15 U.S.C. § 1692a(6); Fla. Stat. § 559.55(7). They also establish she incurred an obligation arising out of a transaction in which services were primarily for her personal purpose (transportation by ambulance), and, therefore, the loan was a debt under both acts. *See* 15 U.S.C. § 1692a(5); Fla. Stat. § 559.55(6). And they establish SCA falsely represented the legal status of the $135 by stating it was delinquent even though it was not. *See* 15 U.S.C. § 1692e(2)(a). They therefore state an FDCPA claim on which relief may be granted. But they do not establish that SCA sent the letter knowing the debt was not delinquent, *see* Doc. 13 ¶ 26 (alleging SCA violated the FCCPA by attempting or threatening to enforce a debt when it knew *or should have known* that the debt was not legitimate), and therefore state no FCCPA claim on which relief may be granted.[5]

## F.   *Damages*

Under the FDCPA, a plaintiff may recover actual damages, statutory damages regardless of provable actual damages (capped at $1000), reasonable attorney's fees, and costs, but not punitive damages. 15 U.S.C. § 1692k(a)(2)(A) & (a)(3). Actual damages include damages for emotional distress. *Minnifield v. Johnson & Freedman, LLC*, 448 F. App'x 914, 916–17 (11th Cir. 2011).

The Eleventh Circuit has not articulated what a plaintiff must establish for emotional distress damages under the FDCPA. Interpreting a bankruptcy provision, the Eleventh Circuit held that to recover emotional distress damages for violating the automatic stay, a plaintiff must suffer significant emotional distress, clearly establish the significant emotional distress, and demonstrate a causal connection between that

---

[5]The letter SCA sent to Proescher's counsel after the lawsuit was filed represents that SCA "had no idea that the account in question was paid in full." Doc. 12-6.

significant emotional distress and violating the automatic stay. *Lodge v. Kondaur Cap. Corp.*, 750 F.3d 1263, 1271 (11th Cir. 2014). In civil rights contexts, the Eleventh Circuit has held emotional distress damages need not be proven with high certainty, a plaintiff may rely on testimony and inference from circumstances, and evidentiary shortcomings go more to amount than fact of damage, though the testimony must establish the plaintiff suffered demonstrable emotional distress—sufficiently articulated—and neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact of a violation suffices. *See Akouri v. State of Fla. Dept. of Transp.*, 408 F.3d 1338, 1345 (11th Cir. 2005); *Ferrill v. Parker Gp., Inc.*, 168 F.3d 468, 476 (11th Cir. 1999); *Marable v. Walker*, 704 F.2d 1219, 1220–21 (11th Cir. 1983); *McLean v. GMAC Mortg. Corp.*, 398 F. App'x 467, 471 (11th Cir. 2010). "The standard of review for awards of … damages for intangible, emotional harms is deferential to the fact finder because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses." *Muñoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1349 (11th Cir. 2000).

This Court analyzed the range of emotional distress damages in FDCPA and FCCPA cases in *Goodin v. Bank of America*, observing many courts have declined to award emotional distress damages if the plaintiff does not offer medical bills, while others have done so, "albeit usually in relatively small amounts," with a few exceptions. 114 F. Supp. 3d 1197, 1212–13 (M.D. Fla. 2015) (citing cases). The Court observed, "Emotional distress damages are particularly difficult to quantify." *Id.* at 1213.

Proescher seeks actual damages but specifies no amount in the current motion and did not attend the evidentiary hearing to allow observation of her demeanor.[6] In

---

[6]In the complaint, Proescher demands statutory damages of $1000 under the FDCPA, actual damages, "injunctive and declaratory relief regarding further collection attempts," and "all other relief to which [she] is entitled." Doc. 1 at 5. The proposed final default judgment accompanying the original motion for default judgment stated she "shall recover" $20,725 in damages without specifying the type of damages. Doc. 7-2. The proposed final judgment accompanying the amended motion stated she "shall recover" $15,000 in actual damages. Doc. 9-1. At the hearing, her counsel stated she was seeking

the affidavit her counsel presented in her stead, she states she "found the [August 4, 2017] letter to be very disturbing and unprofessional," upon reading it and reviewing her credit report, she "became emotionally distraught and physically ill," she thought she was having a panic attack because she had worked hard to maintain her credit score, she "immediately" tried to call her lawyer to figure out why she received the letter, and it took several hours of her time to realize she needed to take legal action to resolve the matter. Doc. 12-7 ¶¶ 9, 12–15. She does not explain if or how the violation affected her credit ratings (beyond an unsworn and unadorned statement in a memoranda of law that she feared her credit "would continue to plunge as a result of [SCA's] reporting of the debt," Doc. 9-2 ¶ 20). She does not explain her emotional distress or physical illness beyond that she thought she was having a panic attack, and, because she did not attend the evidentiary hearing, the Court could not observe her demeanor in describing her reactions to the letter, could not probe what it means to her to feel like she is having a panic attack, and could not determine if her ability to "immediately" call her lawyer to answer questions and solve the problem lessened any distress. With no specific amount requested and these evidentiary shortcomings, but drawing on the general affidavit statements and inference from the circumstances, $100 in actual damages is appropriate.

In setting statutory damages, a court must consider the frequency and persistence of the defendant's noncompliance and the extent to which its violations were intentional. 15 U.S.C. 1692k(b)(1). "The decision whether to award statutory damages under the FDCPA and the size of the award are matters committed to the sound discretion of the district court." *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 86 (2d Cir. 1998).

---

$1000 in statutory damages under the FDCPA and actual damages (without specifying an amount). Doc. 14 at 4. In the subsequent second amended motion for default judgment, she states she is entitled to "actual damages" under the FDCPA and asks "that the Court enter judgment in [her] favor … and/or any other relief the Court deems just and proper" Doc. 13 at 2, 4, without specifying an amount or mentioning statutory damages, *see generally* Doc. 13.

In the complaint and at the evidentiary hearing, Proescher stated she was seeking statutory damages of $1000 for any FDCPA violation. Doc. 14 at 4. The August 4, 2017, letter violated the FDCPA, and SCA did not appear in this case to explain how it determines if a debt has been satisfied before sending the type of letter sent here or what happened to cause the August 4, 2017, letter to be sent to Proescher. Statutory damages are thus warranted. But statutory damages for the maximum amount are not. The letter appears to have been the only violation of the FDCPA. SCA sent the letter after more than a year of nonpayment of the debt (Proescher incurred the debt in May 2016, but it was not paid until June 2017). The letter was not abusively worded. There is no evidence SCA knew the debt had been paid. And SCA corrected the error and apologized after having been alerted to it by the filing of the complaint. Although Proescher argues it took this lawsuit to correct the error, the record indicates no attempt to contact SCA to correct the error upon receipt of the letter—only an immediate call to counsel and a new lawsuit within a month. Under those circumstances, statutory damages of $500 are appropriate.

### G.    *Attorney's Fees*

In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court set out the framework for evaluating the reasonableness of statutorily available attorney-fee awards. That framework is used to determine the reasonableness of attorney's fees in FDCPA cases. *Hollis v. Roberts*, 984 F.2d 1159, 1161 (11th Cir. 1993).

The starting point for assessing reasonableness is a "lodestar" calculation, which is the number of hours reasonably spent multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. The court then must consider other factors that require an adjustment of the lodestar figure to arrive at a reasonable amount. *Id.* at 433–37.

A court should exclude hours that were not "reasonably expended"; in other words, hours that were "excessive, redundant, or otherwise unnecessary." *Id.* at 434. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills,

17

experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The relevant legal community is where the case is filed. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). The court must then consider other relevant factors to determine whether to adjust the fee upward or downward, including the critical factor of "results obtained." *Hensley*, 461 U.S. at 434.

Because paralegals and law clerks often perform work "that might otherwise be performed by a lawyer and billed at a higher rate," such as "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence," a court may compensate a successful litigant for time spent by them if the prevailing practice in the local community is to separately bill for their work. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989). But work by "secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product" is usually subsumed in the rates already charged by attorneys. *Id.* at 285; *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 582−83 (2008). Billing separately for "such items as secretarial time, paper clips, electricity, and other expenses" is not justified unless it is the "prevailing practice in the local community." *Jenkins*, 491 U.S. at 287 n.9. If work is "purely clerical or secretarial," it should not be billed at paralegal or attorney rates, even if a paralegal or attorney performs it. *Id.* at 288 n.10.

The movant must produce evidence to support the rates claimed and hours worked. *Hensley*, 461 U.S. at 433. Sufficient evidence is more than just an affidavit of the attorney who performed the work. *Norman*, 836 F.2d at 1299. "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Id.* The weight given opinion evidence "will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." *Id.*

If evidence is inadequate, a court in its discretion may reduce an award, *Hensley*, 461 U.S. at 433–34, "make the award on its own experience" without further filings or an evidentiary hearing, *Norman*, 836 F.2d at 1303, or exclude unsupported requests, *U.S. ex rel. Jacobs v. Patrol Servs. Inc.*, 202 F. App'x 357, 363–64 (11th Cir. 2006). "The court's order … must allow meaningful review—the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Norman*, 836 F.2d at 1304. "If the court disallows hours, it must explain which hours are disallowed and show why an award of these hours would be improper." *Id.* at 1303.

Proescher's counsel provides insufficient evidence to support his claim for $3,825[7] in attorney's fees and costs, merely representing he has "been admitted to practice law since 2010," he "works at a $250.00/hourly rate," he has a "paralegal with over 27 years of experience who works at $125.00 an hour," he spent "12.6 hours of attorney time" and "1.2 hours" of paralegal time, and he "incurred costs in the amount of $525.00." Doc. 13 ¶¶ 31–37.

On the Court's own experience, the prevailing market rate in Jacksonville for similar services (filing an uncomplicated case involving wrongful debt collection) by lawyers admitted seven years ago but whose skills, experience, and reputation are unknown is $200 an hour. The prevailing market rate in Jacksonville for paralegal services by a paralegal with more than 25 years' experience is $125.

Proescher filed nothing breaking down the claimed 12.6 attorney hours and 1.2 paralegal hours. The work necessarily included gathering facts from Proescher, drafting a five-page complaint (some of which appears to be standard language from pleadings in other cases), Doc. 1, drafting an affidavit from Proescher, Doc. 12-7,

---

[7]There appears to be an error in the calculations. Proescher claims $3850 in attorney's fees and costs, Doc. 13 ¶ 37, based on 12.6 hours of attorney time at a rate of $250/hour (total of $3,150), 1.2 hours of paralegal time at a rate of $125/hour (total of $150), and $525 in costs. Doc. 13 ¶¶ 32, 34–36. This only adds up to $3825—an unexplained shortage of $25.

drafting very basic motions and memoranda of law, Docs. 7, 8, 9, 13, and preparing for and attending a 16-minute evidentiary hearing, Doc. 12. With no support for the hours claimed despite an opportunity to provide support and no ability to determine if the hours were excessive, redundant, or otherwise unnecessary, or if any time was spent on secretarial work, reducing the hours by 25 percent, for 9.45 attorney hours at $200 an hour (for a total attorney fee of $1,890) and .9 paralegal hours at $125/hour (for a total paralegal fee of $112.50) is appropriate. The lodestar is $2002.50.

There is a "strong" presumption the lodestar figure is sufficient. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). An enhancement may be awarded in "rare" and "exceptional" circumstances. *Id.* "[A]n enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." *Id.* at 553. Proescher offers no evidence—much less specific evidence—to show a rare or exceptional circumstance that would rebut the strong presumption that the lodestar figure is sufficient. *See Perdue*, 559 U.S. at 551. No adjustment is warranted.

## H.     Costs

A prevailing party in an FDCPA case is entitled to costs. 15 U.S.C. § 1692k(a)(3). Allowable costs include the clerk's filing fee, 28 U.S.C. § 1920(1), and the cost of private service of process in an amount that does not exceed what the United States Marshals Service charges, *EEOC v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000), which is $65 plus travel and other expenses, 28 C.F.R. § 0.114(a)(3).

Proescher's counsel states he incurred $525 in costs but does not describe the costs. Doc. 13 ¶ 36. The docket reflects Proescher paid a $400 filing fee, Doc. 1, and that the summons was served on SCA, Doc. 4. Absent any additional evidence, I recommend taxing $465 in costs.[8]

---

[8]In the proposed judgments submitted with the original and amended motions for default judgment, Proescher asked for interest on any judgment amount at the rate of 4.97% annum, Docs. 7-2, 9-1. She did not explain a basis for that percentage or request interest in the second amended motion for default judgment now pending. Post-judgment

### III.   Recommendation[9]

I **recommend**:

1.   **granting in part** the second amended motion for final default judgment, Doc. 13;

2.   **entering** default judgment for Tina Proescher and against Security Collection Agency on the FDCPA claim in the total amount of $3067.50 (representing $100 in actual damages under the FDCPA, $500 in statutory damages under the FDCPA, $2002.50 in attorney and paralegal fees, and $465 in costs);

and

3.   **directing** the clerk to separately enter final judgment for Tina Proescher and against Security Collection Agency in the total amount of $3067.50 and then close the case.

**Entered** in Jacksonville, Florida, on June 8, 2018.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

---

interest is governed by 28 U.S.C. § 1961(a) (interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the judgment"). Post-judgment interest is awarded by § 1961 as a matter of law and is automatically added whether or not the court orders it. *Dunn v. HOVIC*, 13 F.3d 58, 62 (3d Cir. 1993).

[9]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

c:      Counsel of Record

Security Collection Agency
(d/b/a Applied Business Services, Inc.)
1200 S. Pine Island Road, Suite 240
Plantation, FL 33324